**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

IN RE:

| | |
|---|---|
| BOBBY DARWIN COATES AND DONNA GAIL COATES | CASE NO. 11-52963 |
| DEBTORS | |
| JAMES D. LYON, TRUSTEE | PLAINTIFF |
| V. | ADV. NO. 13-5029 |
| BOBBY DARWIN COATES AND DONNA GAIL COATES | DEFENDANTS |

**MEMORANDUM OPINION**

The Plaintiff and chapter 7 trustee, James D. Lyon (the "Trustee"), seeks to revoke the discharge of the Debtors, Bobby Darwin Coates ("Darwin") and Donna Gail Coates ("Donna"), and recover damages suffered as a result, pursuant to 11 U.S.C. § 727(d)(2) for knowingly and fraudulently failing to disclose an asset of the estate and the subsequent use of that asset. The Debtors acknowledge the error, but claim it was an honest mistake caused by their lack of financial education and exacerbated by the actions of counsel.

For the reasons set forth below, the Court finds that the Trustee has met his burden of proof in showing that Darwin acted knowingly and fraudulently in failing to disclose and subsequently using an asset of the estate and his discharge is revoked. The Trustee failed to meet that burden as to Donna. The Trustee is also entitled to damages from Darwin in the amount of $5,935.00.

1

**I.     FACTS.**

The relevant facts, with the exception of the Debtors' intent, are undisputed and set out in the Joint Stipulations of Fact. [Doc. 83]. The Joint Stipulations are incorporated herein, and further supported by the testimony and evidence presented at trial, as set forth in more detail below.

Prior to filing for bankruptcy, Darwin owned a 2006 Dodge 2500 (the "Prepetition Vehicle") that he used in his drywall business. On September 22, 2011, Darwin transferred the Prepetition Vehicle[1] to Central Kentucky Truck & Trailer Sales in exchange for a $22,000.00 credit against the purchase of another vehicle (the "Vehicle Credit"). [Exh. 3 at Doc. 85]. The Prepetition Vehicle was previously encumbered by a lien in favor of a close family friend, Darrell Osborne ("Osborne"), but he voluntarily released the lien on September 11, 2011.

Approximately a month after the sale, the Debtors retained James Westenhoefer as counsel and filed a chapter 7 petition on October 25, 2011. The Trustee was appointed the same day.

In the Statement of Financial Affairs ("SOFA"), the Debtors disclosed the sale of the Prepetition Vehicle, but did not admit the existence of the Vehicle Credit. [Exh. 2 at Doc. 85]. Instead, the response to Question 10 of the SOFA provides: "2006 Dodge Truck ($20,000 – all paid to lienholder Darrell Osborne, 4352 Walnut Meadow Drive, Lexington, KY 40509." Further, when questioned about the lien at the § 341 meeting held on November 21, 2011, the Debtors confirmed under oath the information disclosed in the Petition and SOFA, including the answer to Question 10. [Exh. 5 at Doc. 85].

---

[1] The parties sometimes referred to the Prepetition Vehicle during testimony as the "white truck."

2

On January 29, 2012, Darwin applied the Vehicle Credit to the purchase of a 2700 Dodge 3500 truck (the "Post-petition Vehicle")[2] and granted a lien on the Post-petition Vehicle to Timothy Cobb of Central Kentucky Truck & Trailer Sales. [Exh. 4 at Doc. 85]. Neither Darwin nor Donna disclosed the purchase of the Post-petition Vehicle to the Trustee. The Debtors received their discharge the next day.

On August 21, 2012, in reliance on the Debtors' Petition, SOFA and testimony at the § 341 meeting, the Trustee commenced Adversary Proceeding No. 12-5037 against Osborne seeking to recover the proceeds paid to him following the sale of the Prepetition Vehicle. During discovery, the Trustee learned the truth about the sale of the Prepetition Vehicle, the existence of the Vehicle Credit and the purchase of the Post-petition Vehicle. He subsequently dismissed the adversary proceeding against Osborne and scheduled a Rule 2004 examination of the Debtors.

Faced with the Rule 2004 examination, the Debtors attempted to contact Westenhoefer but were unable to secure Westenhoefer's aid. Thus the Debtors sought other counsel and ultimately hired Susan Martin to discuss the implications of their actions with the Trustee. The Debtors agreed the Vehicle Credit was property of the estate and the Post-petition Vehicle was the proceeds or product of the Vehicle Credit, so they surrendered the Post-petition Vehicle to the Trustee on April 10, 2013. The Trustee sold the Post-Petition Vehicle for the benefit of the Debtors' estate on May 18, 2013, for $26,000.00. According to the Joint Stipulations, of the $26,000.00 received from the sale, $9,935.00 was paid to Cobb, leaving the estate with $16,065.00 in proceeds. [Doc. 83].

Despite Ms. Martin's help in the surrender of the Vehicle, the Debtors appeared and testified at the Rule 2004 examination without representation by counsel.

---

[2] The parties sometimes referred to the Prepetition Vehicle during testimony as the "red truck."

On August 28, 2013, the Trustee filed the underlying adversary proceeding seeking to revoke the Debtors' discharge for knowingly and fraudulently failing to report the existence of the Vehicle Credit and acquisition of the Post-petition Vehicle. The Trustee further seeks recovery of the difference between the Vehicle Credit and the proceeds of the sale of the Post-Petition Vehicle as damages, plus legal fees and costs.

The Court conducted a trial on these issues on June 10, 2014. The Trustee and Westenhoefer testified in support of the allegations and introduced into evidence the Petition, SOFA, contracts related to both the Prepetition Vehicle and Post-petition Vehicle, transcripts from the § 341 meeting and the Rule 2004 examination, and a client questionnaire completed prepetition by the Debtors at Westenhoefer's request (the "Client Questionnaire"). The exhibits were admitted into evidence without objection.

The Trustee testified as to the events leading up to the underlying adversary proceeding and the contracts related to the Pre-petition Vehicle and Post-Petition Vehicle. Of particular importance is the contract acknowledging the sale of the Prepetition Vehicle to, and the creation of the Vehicle Credit with, Central Kentucky Truck & Trailer Sales, which provided the following agreement by Darwin: "I'm releasing 2006 Dodge 2500 to Central Ky Truck and Trailer for good faith deposit/trade-in towards 2007 + newer Dodge 3500 Dually with under 50,000.00 miles at which time they locate truck I agree to accept $22,000.00 trade value as a credit off new truck." [Exh. 3 at Doc. 85]. The contract for purchase of the Post-petition Vehicle showed application of the Vehicle Credit and a lien granted in favor of Cobb. [Exh. 4 at Doc. 85].

Westenhoefer testified that when he reviewed their responses to the Client Questionnaire, the Debtors disclosed the transfer of the Prepetition Vehicle and told him the lien proceeds were

4

paid to Osborne. He recorded this information on the Client Questionnaire and used it in preparation of the SOFA. He also met with the Debtors after the Petition, Schedules and SOFA were prepared to go over the documents with the Debtors prior to signing and filing. No amendments were made. Each meeting lasted at least an hour.

The Debtors and Osborne testified in defense of the Trustee's allegations. The Debtors acknowledge the error, but claim it is an honest mistake caused by their lack of financial education and misplaced reliance on their counsel. The Debtors contend that they told Westenhoefer that Osborne was to receive the proceeds from the sale of the Prepetition Vehicle based on Darwin's strong belief that he should repay Osborne regardless of whether Osborne held a lien on the Prepetition Vehicle. According to the Debtors, the mistake in the SOFA and the subsequent confirmation of that information at the § 341 meeting is a result of miscommunication with counsel and their lack of financial sophistication.

Upon conclusion of the trial, the matter was taken under submission and is now ripe for a determination.

## II. **DISCUSSION**.

### A. **Jurisdiction**.

The Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. § 1409.

### B. **The Trustee has Proven by a Preponderance of the Evidence that Darwin's Discharge should be Revoked, but the Trustee has Failed to Satisfy His Burden to Prove the Same for Donna.**

#### 1. **Revocation of Discharge is Governed by § 727(d)**.

Section 727 of the Bankruptcy Code addresses granting and revocation of a debtor's chapter 7 discharge. Section 727 provides:

5

>    d)   On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if--
>
>    (1)   …;
>
>    (2)   the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee; … .

11 U.S.C. § 727(d)(2). The Trustee has the burden of proof by a preponderance of the evidence. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000).

## 2. Fraudulent Intent Requires a Knowing Intent to Defraud or Grossly Reckless Action.

The Trustee must prove the Debtors acted with the knowing intent to defraud, or acted so recklessly as to justify a finding that the debtor acted fraudulently. *Yoppolo v. Walter (In re Walter)*, 265 B.R. 753, 761 (Bankr. N.D. Ohio 2001). An unpublished decision of the Sixth Circuit Bankruptcy Panel explains:

> The Debtor's fraudulent intent may be established by showing that the Debtor knowingly intended to defraud the trustee or engaged in such reckless behavior as to justify the finding of fraud. *In re Yonikus,* 974 F.2d 901, 905 (7th Cir. 1992); *see also In re Keeney,* 227 F.3d at 686. A reckless indifference to the truth, which can be shown by circumstantial evidence, is the equivalent of fraud. *Diorio v. Kreisler–Borg Constr. Co.,* 407 F.2d 1330, 1331 (2nd Cir. 1969) (per curium); *see also Sholdra v. Chilmark Fin. LLP (In re Sholdra),* 249 F.3d 380, 382 (5th Cir. 2001). Because only the debtor can testify directly concerning his intent and the debtor herein asserts that his intentions were not fraudulent, determining whether he acted with fraudulent intent is difficult. However, fraudulent intent may be inferred from all the facts and circumstances. *In re Keeney,* 227 F.3d at 686; *In re Yonikus,* 974 F.2d at 905. Additionally, the Debtor's "whole pattern of conduct" can support a finding of fraudulent intent. *First Texas Sav. Ass'n., Inc. v. Reed (Matter of Reed),* 700 F.2d 986, 991 (5th Cir. 1983); *see also In re Hamo,* 233 B.R. at 724; *In re Yonikus,* 974 F.2d at 905–06.

*In re Rivera*, 356 B.R. 786, *5 (6th Cir. BAP 2007) (table) (unpublished).  *See also Mason v. Cole (In re Cole)*, Case No. 03-61177, Adv. No. 06-6201, 2007 WL 2138591, *3 (Bankr. N.D. Ohio July 23, 2007).

     **3.   The Trustee Satisfied his Burden of Proof as to Darwin.**

The Debtors admit the alleged actions, but argue they do not possess a sophisticated understanding of finance, collections or secured transactions.  The Debtors testified they lack the basic knowledge necessary to act with a fraudulent intent as Darwin has an 8th grade education and Donna only completed high school.  Further, they argue that once they learned of their mistake, they surrendered the Post-petition Vehicle to the Trustee, which is indicative of their honest intentions.

     **a.   Darwin's lack of education does not justify his actions or inactions.**

The evidence indicates by a preponderance of the evidence that Darwin knowingly, or with gross recklessness, failed to disclose an asset of the estate to his legal counsel or the Trustee and then used that asset for his own benefit.  Darwin testified that he does not read or spell well.  He testified that because of this impediment, he did not understand or recognize the mistake in the SOFA when he signed the Petition or testified at the § 341 meeting.

But Darwin also testified that he understood verbal explanations.  It is undisputed that Westenhoefer met with the Debtors twice, once to review the Client Questionnaire and later to review the Petition and SOFA for any necessary amendments prior to filing.  Westenhoefer, Donna and Darwin agreed that they met to discuss the Client Questionnaire for at least an hour.  The Questionnaire describes a transfer of a "06 Dodge Truck" to "Central Ky Truck + Trailer" on August 20, 2011, for $20,000 "all paid to lienholder Darrell Osborne."  [Exh. 7 at Doc. 85].

7

Westenhoefer credibly testified that he filled in this information based on information provided to him by the Debtors.

Darwin testified that he could not recall the explanation given to Westenhoefer. Darwin's testimony is that he only knows what he meant to say, not what was actually said. Darwin's testimony does nothing to discredit Westenhoefer's explanation of the information included in the SOFA. Further, Donna testified that they told Westenhoefer "all **to get** paid to lienholder Darrell Osborne" (*i.e.*, in the future). This testimony did not seem genuine, but regardless, it does not discredit Westenhoefer.

Even if Darwin did not understand the Petition or SOFA, or Westenhoefer's explanation at the prepetition meetings, he failed to correct any miscommunication during a verbal exchange at the § 341 meeting. Westenhoefer testified that the Debtors appeared to hesitate to answer questions by a creditor's counsel about the Debtors' obligation to Osborne and the statements on the SOFA, so he stepped in to help answer the lawyer's questions. It is not unusual for legal counsel to assist with explanations at a § 341 meeting.

In doing so, Westenhoefer referred to the disclosure of the sale of the Post-petition Vehicle in the SOFA, saying in part: "… on the statement of financial affairs we show where a vehicle was sold at some point within the two years before bankruptcy, it was a 2006 Dodge truck, and it was paid to Darryl Osborne who was the lienholder." [Exh. 5 at Doc. 85]. As Westenhoffer continued his explanation, he gave Darwin the opportunity to correct him if the explanation was wrong. Rather than taking this opportunity to set the record straight, particularly as he knew Westenhoefer's argument was clearly wrong based on his own testimony at trial, Darwin answered "Right." *Id.*

8

### b. **The proceeds of the sale of the Prepetition Vehicle were not intended to go to Osborne.**

Darwin's testimony that he intended the proceeds of the transfer of the Prepetition Vehicle would go to Osborne are unconvincing. Contrary to Darwin's testimony that he does not understand secured transactions, the evidence is that Darwin sought the release of Osborne's lien on the Prepetition Vehicle before he sold it to Central Kentucky Truck & Trailer.[3] Darwin at least knew he could not sell a vehicle without clean title.

Further, there is one glaring omission and an admission that completely discredits Darwin's testimony. Darwin did not credibly explain why he used the Vehicle Credit in January 2013 if he truly expected those funds to go to Osborne or why he gave a lien to a third party over Osborne. It is difficult to believe Darwin's testimony that he intended the proceeds from the sale of the Prepetition Vehicle to be turned over to Osborne, despite the release of the lien, when he used the Vehicle Credit and also allowed another party to place a lien on the Post-petition Vehicle.

Even more damning, and suggesting an outright fabrication, is Darwin's admission that he always intended to trade the Prepetition Vehicle for the Post-petition Vehicle. The Debtors submitted the Affidavit of Bobby D. Coates to overcome the Trustee's request for summary judgment and the same Affidavit was admitted into evidence at trial. [Exh. 8 at Doc. 85]. In the Affidavit, Darwin admitted that: "He [Osborne] permitted this release so that I could trade this truck [the Prepetition Vehicle] on another truck." *Id at* p. 2, ¶ 10.

---

[3] The Debtors introduced a title lien statement signed September 11, 2011, and recorded September 23, 2011, that showed a release of Osborne's lien. This was not filed in the record or formally admitted into evidence, but the Trustee's counsel did not object to its use for rebuttal purposes and no party disputes release of the lien. This additional document does not add to or detract from the analysis as this information was included in the parties' Joint Stipulations. [Doc. 83].

9

### c. The Trustee and Westenhoefer did not delay discovery of the Debtors' inaccurate information.

The Debtors' questions to both the Trustee and Westenhoffer attempted to suggest they should have done more to investigate the sale of the Prepetition Vehicle, presumably in an attempt to raise an issue with the statute of limitations in 11 U.S.C. § 727(e).[4] The Trustee testified that the Petition, SOFA and answers provided at the § 341 meeting raised a concern regarding Osborne and a possible preference, not fraud by the Debtors. Westenhoffer credibly explained that the Petition and SOFA accurately describe his understanding of the transaction as described on the Client Questionnaire and at the § 341 meeting.

These explanations are reasonable and it is found and determined that the Trustee and Westenhoffer did not delay discovery of the inaccurate information by any action or inaction.

### 4. The Trustee Has Not Satisfied His Burden of Proof as to Donna.

It is clear by a preponderance of the evidence that Darwin knowingly and fraudulently failed to disclose the Vehicle Credit as an asset of the estate, but this is not the same case for Donna. Donna did not sign the contract for sale of the Prepetition Vehicle. [Exh. 3 at Doc. 85]. Further, Darwin signed her name on the contract for purchase of the Post-petition Vehicle as she was home sick that day. [Exh. 4 at Doc. 85]. There is no evidence that Donna had full knowledge of either transaction, as Donna was not actively involved in Darwin's drywall business and she relied on Darwin to make decisions regarding the Vehicles.

Donna did not speak up at the § 341 meeting, but her testimony that she relied on Westenhoefer because she was nervous and not a party to the sale transaction is credible. Further, Darwin, who was a party to the transaction, confirmed Westenhoefer's explanation. It is not unreasonable that Donna did not add to the discussion.

---

[4] This issue was already addressed in the denial of the Debtors' motion to dismiss the case. *See* Doc. 72.

Therefore, the Trustee has failed to meet his burden to prove that Donna acted fraudulently or with gross recklessness by a preponderance of the evidence.

### 5. **The Arguments Regarding Counsel's Representation of the Debtors Does Not Affect the Result.**

The Debtors, and particularly Donna, testified that their actions are not fraudulent because the inaccuracies are the fault of their counsel. They further argue that the situation was exacerbated by Westenhoefer's failure to return their phone calls when the Trustee discovered Darwin's deception. As the above discussion reveals, these accusations have no merit. Darwin acted either knowingly or, at least with gross recklessness, when he did not correct Westenhoffer during pre-bankruptcy planning or at the § 341 meeting when he clearly knew the information did not accurately reflect the facts.

Further, the Debtors cannot absolve themselves of responsibility for the accuracy of the presentation in the Petition and SOFA. The Sixth Circuit Bankruptcy Panel in *Riveria* explained:

> Generally, reliance on counsel can show that the Debtor lacked the requisite intent required to revoke or deny his discharge. *First Beverly Bank v. Adeeb (In re Adeeb),* 787 F.2d 1339, 1343 (9th Cir.1986). However, his reliance must be reasonable and in good faith. *Id.; U.S. v. Lindo,* 18 F.3d 353, 356 (6th Cir.1994); *Spring Works, Inc. v. Sarff (In re Sarff),* 242 B.R. 620, 629 (B.A.P. 6th Cir.2000); *In re Colvin,* 288 B.R. 477, 483 (Bankr. E. D. Mich. 2003) ("[R]eliance on the advice of counsel can save a debtor from the consequences of failing to disclose assets only when that reliance is reasonable and in good faith.").

*Rivera*, 356 B.R. at *7. It is unreasonable for Darwin to blame his counsel for his failure to thoroughly review the Petition and SOFA before signing or allowing Westenhoefer and the Trustee to believe the SOFA and Westenhoefer's subsequent explanation were accurate when they were not. The responsibility to review the documents before signing or speak up at the § 341 meeting belongs to Darwin, not Westenhoefer, and there is absolutely no evidence that Darwin was prevented from doing either.

11

As for Debtors' complaints about their interactions, or lack thereof, with Westenhoefer following the Trustee's discovery of Darwin's deceit, these complaints involve activity after Darwin's fraudulent conduct and thus have little impact on the Debtors' intent under these facts.[5]

### III.  DAMAGES.

The evidence shows a conscious effort by Darwin to provide, or at least perpetuate the delivery of, misleading information in the Petition, SOFA and at the § 341 meeting.  These actions wasted the Trustee's resources because they led to an unsupportable claim against Osborne.  The Debtors' misstatements also delayed and reduced distributions to unsecured creditors, as the estate was only able to recover $16,065.00 in proceeds from an asset worth $22,000.00.  Therefore, the Trustee is entitled to recover the difference between the Vehicle Credit and the proceeds of the sale of the Post-Petition Vehicle in the amount of $5,935.00 as compensatory damages.

### IV.  CONCLUSION.

The foregoing constitutes the Court's findings of fact and conclusions of law.  In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits, and arguments of counsel, regardless of whether or not they are specifically referred to in this decision.  A separate Order shall be entered accordingly.

---

[5] The lack of legal representation of the Debtors at the Rule 2004 examination is troubling.  [Exh. 7 at Doc. 85]. This decision does not rely on the examination transcript as the alleged fraudulent acts occurred when they were adequately represented by counsel.  Therefore, no harm occurred from the lack of representation at that examination.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
Dated: Friday, June 13, 2014
(grs)